# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MAYA CROSBY and DENEEN PATTON, on behalf of themselves and all those similarly situated, | ) ) ) ) |
| Plaintiffs, | ) NO. 3:18-cv-00503 |
| | ) CHIEF JUDGE CRENSHAW |
| v. | ) ) |
| STAGE STORES, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Pending before the Court in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, is Plaintiffs' Motion For Court-Authorized Notice Pursuant to Section 216(b) of the FLSA. (Doc. No. 30.) Defendant Stage Stores, Inc. ("Stage") has responded in opposition (Doc. No. 42), to which Plaintiffs have replied (Doc. No. 45). For the reasons below, Plaintiffs' motion for conditional certification will be granted.

### I. Factual Background

The two named plaintiffs, Maya Crosby and Deneen Patton ("Named Plaintiffs"), are former employees of Stage. (Doc. No. 1 at 1-2.) Stage is a retail clothing company that operates approximately 800 stores in 42 states under various brand names such as Stage, Peebles, Goody's, Bealls, and Palais Royal. (Id.) In order to operate its stores, Stage employs a variety of hourly, non-exempt employees, including Sales Associates, Visual Associates, eCommerce Fulfillment Associates, Custodian Freight Associates, Counter Managers, Cosmetic Sales Managers, Beauty Advisors, and Assistant Store Managers ("Hourly Workers"). (Id.) These Hourly Workers share similar job duties, including assisting customers, completing purchases, cleaning stores,

organizing displays, and unloading merchandise. (Id.) Named Plaintiffs, who were employed as Hourly Workers at Stage, first allege that Stage engaged in a practice of "time-shaving" whereby Hourly Workers who worked in excess of 40 hours a week (1) had their time logs altered to reflect that no excess hours were worked; or (2) were instructed not to record their excess hours. (Id. at 2.) Further, Named Plaintiffs allege that they were routinely required to perform "off the clock" work before, during, or after their scheduled shifts. (Id. at 6.) Accordingly, in the instant suit, Named Plaintiffs seek to represent a class consisting of:

> All persons who at any time from May 30, 2015 through the date of final judgment in this matter have worked as hourly, non-exempt employees whose titles included without limitation Sales Associates, Visual Associates, eCommerce Fulfillment Associates, Custodian Freight Associates, Counter Managers, Cosmetic Sales Managers, Beauty Advisors, and Assistant Store Managers (collectively "Hourly Workers") in Defendant's United States locations that operate under the brand names Stage, Peebles, Goody's, Bealls, and Palais Royal.

(Doc. No. 30 at 1-2.)

On September 12, 2018, Named Plaintiffs filed the instant motion for conditional class certification. (Id.) In support of the motion, Named Plaintiffs each filed their own declaration, and they also filed "representative" declarations from ten other Hourly Workers employed by Stage at 8 different store locations in 5 different states. (See Doc. Nos. 32-12, 32-13, 32-14, 32-15, 32-16, 32-17, 32-18, 32-19, 32-20, 32-21, 32-22, 32-23.) Plaintiffs ask the Court to: (1) conditionally certify the proposed collective; (2) order Stage to produce a computer-readable data file containing the names, last known mailing addresses, last known telephone numbers, last known personal and work email addresses, social security numbers, and work locations for all FLSA collective members; (3) provide an opt-in notice to the FLSA collective members currently employed by Stage in their pay envelopes; and (4) approve the proposed notice distribution process. (Doc. No. 31 at 31.)

2

## II.     Conditional Certification of Plaintiffs' Claims

### A.     FLSA Certification Standard

The FLSA generally requires that employers pay employees specified hourly rates for up to 40 hours per week, and pay overtime compensation at one and one half times the regular rate for hours worked in excess of 40 hours in a week. 29 U.S.C. § 207. To enforce this provision, an aggrieved employee may bring a collective action on his own behalf, and on behalf of all those who are similarly situated and who opt in by giving consent in writing to become a party. 29 U.S.C. § 216(b).

Lead plaintiffs bear the burden of showing that opt-in plaintiffs are similarly situated. Frye v. Baptist Mem'l. Hosp., Inc., 495 F. App'x 669, 671 (6th Cir. 2012). The FLSA does not define the term "similarly situated." The Sixth Circuit has noted that courts have considered the "'factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" O'Brien v. Ed Donnelly Enters., 575 F.3d 567, 584 (6th Cir. 2009), abrogated on other grounds, Campbell-Edwald Co. v. Gomez, 136 S. Ct. 663, 670 (2016). "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." Id. at 585. But employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." Id. Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." Id. at 584. For example, in O'Brien, the Sixth Circuit stated that even a requirement that employees' "causes of action under

3

the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." Id. at 585.

Where, as here, the request is made early in the case and prior to significant discovery, the standard is "fairly lenient," and requires only "a modest factual showing" that "typically results in conditional certification of a representative class." Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006) (quoting Pritchard v. Dent Wizard Int'l Corp., 210 F.R.D. 591, 594 (S.D. Ohio 2002); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D. N.J. 2000)). In meeting this burden, substantial allegations supported by declarations are "all that is required." White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 373 (E.D. Tenn. 2006). At this first stage of conditional certification, the court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Roberts v. Corr. Corp. of Am., No. 3:14-cv-2009, 2015 WL 3905088, at *10 (M.D. Tenn. Jun. 25, 2015) (citing Brasfield v. Source Broadband Servs., LLC, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." Comer, 454 F.3d at 546. "At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated" because "the court has much more information on which to base its decision and, as a result, [it] employs a stricter standard." Id. (quoting Morisky, 111 F. Supp. 2d at 497).

### B. Plaintiffs' Declarations

In support of the motion for conditional certification, Plaintiffs have submitted twelve total declarations from themselves and other former Stage Hourly Workers, each stating that they were forced to perform "off-the-clock" work without being compensated, whether by performing work

4

before clocking in, after clocking out, during breaks, or having their hourly logs manipulated through time-shaving. (See Doc. Nos. 31 at 15, 32-12, 32-13, 32-14, 32-15, 32-16, 32-17, 32-18, 32-19, 32-20, 32-21, 32-22, 32-23.) In Named Plaintiffs' two supporting declarations, they aver that Hourly Workers were not compensated for all work performed. (Doc. Nos. 32-12, 32-13.) The Named Plaintiffs' declarations both contain similar factual allegations—namely, that they routinely performed "off-the-clock" work. (Id.) For example, Maya Crosby states that, while employed as an Hourly Worker, she was often required to perform work before she clocked in and after she clocked out, for which she was not paid. (Doc. No. 32-12 at 5-6.) Crosby further declares that her manager would go into the time system and change her hourly log to reflect that she did not work over 40 hours in a given week, even when she worked far in excess of 40 hours (i.e., shaving her time). (Id. at 6.)

Named Plaintiff Deneen Patton's declaration contains substantially similar statements. (See Doc. No. 37-13 at 4-6.) Patton explains that she would typically arrive one hour before the start of her opening shift and begin working upon arrival, but, at her manager's direction, she would not clock in for her shift until her scheduled start time. (Id. at 4.) Further, because Patton's managers told her she was not allowed to enter overtime hours, she entered hours corresponding to her scheduled shift, even though they did not accurately reflect the excess hours she worked. (Id. at 5.) Named Plaintiffs also offer ten other declarations from former Hourly Workers, stating that they too were subjected to "off-the-clock" work or time-shaving. (See Doc. Nos. 32-14, 32-15, 32-16, 32-17, 32-18, 32-19, 32-20, 32-21, 32-22, 32-23.)

In response, Stage argues that Named Plaintiffs had dramatically different experiences from the other declarants, as the ways in which Named Plaintiffs and the other declarants were allegedly forced to perform "off the clock" work varied significantly. (Doc. No. 42 at 16-25.)

5

Further, Stage filed declarations from twenty-five current employees, each stating that they had never been instructed to work off-the-clock and were unaware of any time-shaving activity. (Doc. Nos. 43-1 through 43-25.)

As to the inconsistencies between Named Plaintiffs and their declarants' different "off-the-clock" experiences, the Court reiterates that a "[s]howing a 'unified policy' of violations is not required [for certification]." O'Brien, 575 F.3d at 585-85; see also Noble v. Serco, Inc., No. 3:08–76–DCR, 2009 WL 3154252, at *4 (E.D. Ky. Sept. 28, 2009) ("When a plaintiff has made the minimal showing required at the notice stage, the defendant cannot overcome [the] [p]laintiff's showing by arguing that individual issues may dominate; rather, that issue must be raised in a motion to decertify at the second stage of the certification process.") Moreover, as to the declarations Stage has filed on its own behalf, the Court declines to consider those declarations because "at this point, [the Court] does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Roberts, 2015 WL 3905088, at *10. In sum, the Court finds that there is no basis to disregard the Named Plaintiffs' twelve declarations and concludes that the Named Plaintiffs' evidence is sufficient to make the required modest evidentiary showing for conditional class certification.

### C. Whether the Prospective Collective Action Plaintiffs Are Similarly Situated

In totality, the twelve declarations adduced by Named Plaintiffs all allege that Stage's employment practices to control labor costs (through "off-the-clock" work and time-shaving) have denied Hourly Workers minimum wage and overtime compensation in violation of the FLSA. These declarations uniformly show (1) employment with Stage; (2) the job title for which certification is sought; (3) performance of similar job duties under the job title regardless of the Stage store at which they worked; (4) payment of wages; (5) work performed (a) for no wage,

6

and/or (b) in excess of forty hours per week without overtime compensation by Stage; and (6) job duties and requirements that do not meet the requirements of any exemptions to the FLSA. (See Doc. Nos. 32-12, 32-13, 32-14, 32-15, 32-16, 32-17, 32-18, 32-19, 32-20, 32-21, 32-22, 32-23.) The Court finds that, at bare minimum, Plaintiffs' claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." O'Brien, 575 F.3d at 585. Accordingly, the Court finds that Plaintiffs are similarly situated for purposes of conditional certification of the proposed class.

As noted, Stage raises a gamut of substantive arguments against certification. (Doc. No. 42 at 8-33.) Stage argues that (1) it has sweeping policies against "off-the-clock" work and time-shaving and has informed its employees of these policies through training and other informational postings; (2) it diligently investigates all reports of violations of this policy; (3) Named Plaintiffs had dramatically different experiences from the other declarants; and (4) Named Plaintiffs admit they had dramatically different experiences from Stage's declarants. (Id.) Nonetheless, "[w]here, as here, plaintiffs have adduced sufficient evidence to meet step one's 'extremely lenient standard' for conditional certification, evidence offered by the defendant purporting to show plaintiffs are not similarly situated . . . while significant after discovery and during the step-two analysis, does not compel denial of conditional certification." Gallagher v. Lackawanna Cnty., No. 3:CV–07–0912, 2008 WL 9375549, at *9 (M.D. Pa. May 30, 2008)). Indeed, "[a] court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." Bearden v. AAA Auto. Club S., Inc., No. 2:11-cv-03104-JTF-dkv, 2013 WL 1181474, *6 (W.D. Tenn. Mar. 18, 2013) (quoting Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d 1272, 1277 n. 6 (M.D. Ala. 2004)). Therefore, the Court will not substantively address the merits of the Stage's defenses at this juncture.

7

Briefly though, as to Stage's arguments regarding the differences between the declarants experiences, the Court does certainly note that "disparate factual and employment settings of the individual plaintiffs" are particular issues that are "appropriately examined under the second stage of the [certification] analysis" (i.e., in a motion for decertification), rather than at the motion for conditional certification stage. White, 236 F.R.D. at 373 (citing Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)). Further, "once [p]laintiffs have met their burden at the notice stage, [d]efendant[s] cannot overcome [p]laintiff[s'] showing by arguing that individual issues may dominate; rather, if, after notice to the putative plaintiffs it appears that individual issues do in fact dominate, the [d]efendant[s] may move the [c]ourt to decertify the class." Id. Additionally, the Court finds that, to the extent Stage relies on its own declarations, "happy camper" declarations—so called because they tend to be from present or former employees handpicked by a defendant/employer—are routinely given little or no weight at the conditional certification stage.[1] See Myers v. Marietta Mem'l Hosp., 201 F. Supp. 3d 884, 891-92 (S.D. Ohio 2016) ("[F]orm affidavits 'gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion.'"); Tinsley v. Covenant Care Servs., LLC, No. 1:14-cv-00026-ACL, 2016 WL 393577, at *9 (E.D. Mo. Feb. 2, 2016) ("Courts have afforded no weight to 'happy camper' affidavits at the conditional certification phase."); Avendano v. Averus, Inc., No. 14-cv-01614-CMA-MJW, 2015 WL

---

[1] The Court also notes that, although Crosby admitted in her declaration that she engaged in time-shaving at the direction of her manager when her manager was absent, these actions do not create a conflict between Crosby and the putative collective. Crosby's limited actions, performed at her manager's direction while the manager was absent, simply do not raise a sufficient conflict of interest, especially considering that Crosby was also forced to alter her own time. (See Doc. No. 43-18 at 3.)

8

1529354, at *7 (D. Colo. Mar. 31, 2015) (stating that courts "generally afford little importance to the so-called 'happy camper' [declarations] when ruling on conditional certification.").

### D. Conclusion

For these reasons, the Court will grant the Plaintiffs' motion for conditional certification. See, e.g., Roberts, 2015 WL 3905088, at *13 (granting motion for conditional certification, despite a variety of employee positions and circumstances involved, where the plaintiffs had made a broad "modest factual showing" that they worked in excess of forty hours per week at various correctional facilities without receiving overtime pay); Miller v. Lebanon Golf & Country Club, No. 3:14–CV–01099, 2014 WL 7359003, at *4 (M.D. Tenn. Dec. 23, 2014) (granting motion for conditional certification where the plaintiffs had met the "low bar" by invoking the common, specific statutory theory that they worked in excess of forty hours per week at a country club without receiving overtime pay); Benson v. Asurion Corp., No. 3:10-cv-526, 2010 WL 4922704, at *4 (M.D. Tenn. Nov. 29, 2010) (granting motion for conditional certification and noting that, even if evidence submitted by the defendant tends to contradict the plaintiffs' evidence or reveal potential weaknesses in their case, it did not preclude conditional certification if the plaintiffs' evidence suggested, at a minimum, that some hourly employees performed uncompensated pre- and post-shift tasks).

In granting conditional certification, the Court finds that Plaintiffs' request for certification of a nationwide collective action that extends to all states in which Stage operates retail stores is appropriate and would serve the interests of justice and efficiency. The Court acknowledges that Plaintiffs have not adduced evidence from employees who have worked in every Stage store in every state in which Stage operates. Nonetheless, given the FLSA's broad prophylactic remedial purpose, the Court finds the nationwide class necessary and appropriate to achieve such purpose.

9

See Bradford v. Logan's Roadhouse, Inc., 137 F. Supp. 3d 1064, 1078-79 (M.D. Tenn. 2015) ("The court recognizes that the plaintiffs have not adduced evidence from employees whose work has encompassed every [defendant] restaurant in every state in which [defendant] operates . . . [h]owever, this is not necessary, given the FLSA's broad remedial purpose . . ."). Named Plaintiffs have filed declarations from twelve different employees, working across eight stores, in five states. (See Doc. Nos. 32-12, 32-13, 32-14, 32-15, 32-16, 32-17, 32-18, 32-19, 32-20, 32-21, 32-22, 32-23.) Simply put, they have put forward sufficient evidence of common nationwide practices whereby Hourly Workers are forced to engage in "off-the-clock" work in violation of the FLSA to support a nationwide class.

### III. Proposed Notice Protocol and Disclosure of Potential Plaintiffs

FLSA claims are governed by a two-year statute of limitations or, in the case of a "willful violation," a three-year statute of limitations. 29 U.S.C. § 255(a). The statute of limitations is not tolled for any individual class member until that individual has filed a "written consent to join form" with the court. 29 C.F.R. § 790.21(b)(2). The information contained in a notice form is, therefore, important to allow a prospective plaintiff to understand his or her interests and a collective action hinges on "employees receiving accurate and timely notice concerning [its] pendency . . . so that they can make informed decisions about whether to participate." Hoffmann–LaRoche Inc. v. Sperling, 493 U.S. 165, 170 (1989).

There remains the question of Notice and Consent Forms and how they are to be disseminated. First, Stage argues that Named Plaintiffs' proposed Notice and Consent Form (Doc. No. 32-24) inaccurately provides notice to individuals who worked for Stage going back three years from the date this action was filed, rather than three years from the date of the Court's class certification order, as required by the FLSA's statute of limitations. (Doc. No. 42 at 33.) Plaintiffs,

10

Case 3:18-cv-00503 Document 50 Filed 12/05/18 Page 10 of 14 PageID #: 1606

in their reply, do not dispute that the proposed notice should issue to Hourly Workers who worked for Stage in the three years prior to the date of the Court's class certification order. (Doc. No. 45 at 13.) Beyond this change, the parties have set forth no additional arguments regarding the language of the proposed Notice and Consent Form.

After review, the Court confirms that the proposed Notice and Consent Form is not atypical of those have issued in the past. Nevertheless, courts commonly require the parties to confer about the language to be included in the Notice and Consent Form, with the goal being to reach an agreement. See Patton v. ServiceSource Delaware, Inc., No. 3:15-01013, 2016 WL 4441424, at *4 (M.D. Tenn. Aug. 23, 2016) (observing that "it makes sense that the parties be allowed an opportunity to negotiate the language," and stating that "[t]he parties should make every effort to agree on the Proposed Notice and Consent Forms and not squander this opportunity because it is unlikely that the Court will meld competing notices, rather than choose one form over the other."); Miller v. Jackson, No. 3:10-1078, 2011 WL 1060737, at *8 (M.D. Tenn. Mar. 21, 2011) (observing there was nothing "alarming about the proposed Notice and Consent forms," but requiring the parties to "meet and confer in good faith regarding these issues").

Second, Plaintiffs request that the Court order Stage to produce to Plaintiffs' counsel the names, last known mailing addresses, last known telephone numbers, last known personal and work email addresses, and work locations for all putative collective members, and the last four digits of social security numbers for those members whose notices are returned as undeliverable. (Doc. No. 31 at 27-28.) Defendant makes no argument as to the scope of the requested information, but, rather, argues that a third-party administrator, not Plaintiffs' counsel, should provide any notice in the case so as to protect the integrity of the process and the confidential information of potential opt-in plaintiffs. (Doc. No. 42 at 34.) Neither approach strikes the Court as correct.

11

In regards to whether a third-party administrator, rather than Plaintiffs' counsel, should provide notice and protect the potential plaintiffs' confidential information, the Court finds that employment of a third party administrator is unnecessary. See Wysincavage v. Penn Nat'l Gaming, Inc., No. 16-Civ-1063, 2017 WL 5129003, at *7-8 (S.D. Ohio Oct. 23, 2017) (stating that it is unnecessary to incur the expenses of a third-party administrator at the class certification stage); Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009) ("[T]he Court is authorized to order the production of potential class members' contact information to Plaintiff's counsel."). However, as for Plaintiffs' request that Stage provide anything beyond the names, addresses, and last known email addresses of putative class members, the Court finds such disclosure inappropriate at this time, particularly because there has been no showing of a particularized need. See Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 75 (E.D.N.Y. 2016) (collecting cases) ("Courts are reluctant . . . to authorize disclosure of private information, such as dates of birth and social security numbers in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt ins of the collective action."); Bradford, 137 F. Supp. 3d at 1080 (refusing to require the disclosure of social security or telephone numbers in the absence of law or evidence showing that it was "appropriate or necessary"); Wolfram v. PHH Corp., No. 1:12-cv-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) (same).

As to the means of dissemination, Plaintiffs request that the Notice be sent via first class mail and email, posted on a website, and that it also be enclosed with the regularly scheduled paycheck for members of the putative collective. (Doc. No. 31 at 29-30.) Plaintiffs propose a 60-day notice period, with a reminder postcard and email to be sent halfway through the notice period to all eligible Hourly Workers who have not opted-in. (Id. at 30.) Stage requests that the proposed

12

notice not be included in employee paychecks and that the Court reject Plaintiffs' request for the reminder notices. (Doc. No. 42 at 35.)

Although support can be found for each parties' position, "courts within the Sixth Circuit have routinely approved dual notification through regular mail and email." Evans v. Caregivers, Inc., No. 3:17-cv-0402, 2017 WL 2212977, at *7 (M.D. Tenn. May 19, 2017) (citing Williams v. King Bee Delivery, LLC, No. 5:15-cv-306, 2017 WL 987452, at *7 (E.D. Ky. Mar. 14, 2017); Fenley v. Wood Grp. Mustang, Inc., 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016)). "They also have required that employers post the notice at a conspicuous location in their facilities . . . and provide copies with employees paychecks[.]" Id. (citing Jowers v. NPC Int'l, Inc., No. 13-1036, 2016 WL 7238963, at *8 (W.D. Tenn. Dec. 13, 2016); Brown v. Consol. Rest. Operations, Inc., No. 3:12-00788, 2013 WL 4804780, at *7 (M.D. Tenn. Sept. 6, 2013)). In the absence of any showing of prejudice, and because the FLSA requires that putative collective members be provided with notice of this lawsuit and apprised of their rights, the Court will approve the dissemination of Notice in the manner requested by Plaintiffs. Finally, the Court concludes that, contrary to Stage's argument, employees who have acknowledged Stage's Dispute Resolution Program and Mutual Arbitration Agreement should still be provided notice and an opportunity to opt-in, as determining whether Stage's arbitration program precludes a putative class member from joining the action is inappropriate at the class certification stage. See Romero v. La Revise Assocs., L.L.C., 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) ("Courts have consistently held that the existence of arbitration agreements is 'irrelevant' to collective action approval 'because it raises a merits-based determination.'") (quoting D'Antuono v. C & G of Groton, Inc., No. 3:11-cv-33-MRK, 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011)).

## IV. Conclusion

On the basis of the foregoing, the Court will conditionally certify this matter as a collective action, and Stage will be required to furnish Plaintiffs with a list of the putative class members that includes last known physical and email addresses. The parties will be provided with an opportunity to reach agreement as to the Notice and Consent Form.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE