# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MAYA CROSBY and DENEEN PATTON, on behalf of themselves and all those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>STAGE STORES INC.,<br><br>    Defendant. | Civil Action No. 3:18-cv-00503<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br><br>Magistrate Judge Alistair Newbern |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR CORRECTIVE NOTICE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1
PROCEDURAL HISTORY.................................................................................................... 2
STATEMENT OF FACTS ..................................................................................................... 3
ARGUMENT ......................................................................................................................... 6
I.    Defendant and Its Agents Must Cease Communication with Plaintiffs and Potential Plaintiffs Regarding the Lawsuit. ........................................................................ 6
II.   Defendant's Improper Communications to Plaintiffs and Potential Plaintiffs Warrant Corrective Notice. ................................................................................................ 10
III.  Extending the Notice Period Is Necessary to Mitigate Prejudice from Defendant's Misleading Communications........................................................................ 11
CONCLUSION.................................................................................................................... 12

# TABLE OF AUTHORITES

**CASES**            **PAGE(S)**

*Belt v. Emcare, Inc.*,
   299 F. Supp. 2d 664 (E.D. Tex. 2003) ............................................................................. *passim*

*Frye v. Baptist Mem. Hosp., Inc.*,
   No. 07 Civ. 2708, 2008 WL 2117264 (W.D. Tenn. May 20, 2008) .......................................... 6

*Hoffman-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) ................................................................................................................. 6

*Impervious Paint Indus., Inc. v. Ashland Oil*,
   508 F. Supp. 720 (W.D. Ky. 1981) .................................................................................. 10, 11

*Kleiner v. First Nat'l Bank of Atlanta*,
   751 F.2d 1193 (11th Cir. 1985) ............................................................................................... 9

*Longcrier v. HL-A Co., Inc.*,
   595 F. Supp. 2d 1218 (S.D. Ala. 2008) .................................................................................... 8

*Maddy v. General Elec. Co.*,
   No. 14 Civ. 0490, 2015 WL 1344626 (D.N.J. Mar. 23, 2015) .............................................. 11

*Ojeda-Sanchez v. Bland Farms*,
   600 F. Supp. 2d 1373 (S.D. Ga. 2009) ............................................................................ 7, 8, 9

*Pearsall-Dineen v. Freedom Mortg. Corp.*,
   27 F. Supp. 3d 567 (D.N.J. 2014) .......................................................................................... 12

*Potts v. Nashville Limo & Transport, LLC*,
   No. 14 Civ. 1412, 2016 WL 1622015 (M.D. Tenn. Apr. 19, 2016) ............................... 6, 7, 8, 9

*Randolph v. PowerComm Constr., Inc.*,
   41 F. Supp. 3d 461 (D. Md. 2014) ......................................................................................... 10

*Romano v. SLS Residential, Inc.*,
   253 F.R.D. 292 (S.D.N.Y. 2008) ....................................................................................... 8, 10

*Sloan v. Ameristar Casinos, Inc.*,
   No. 12 Civ. 01126, 2013 WL 1127062 (D. Colo. Mar. 18, 2013) ......................................... 12

*Stranksy v. HealthONE of Denver, Inc.*,
   929 F. Supp. 2d 1100 (D. Colo. 2013) .................................................................................... 7

*Veliz v. Cintas Corp.*,
   No. 03 Civ. 1180, 2004 WL 2623909 (N.D. Cal. Nov. 12, 2004) ......................................... 12

*Woods v. RHA Tenn. Group Homes, Inc.*,
    803 F. Supp. 2d 789 (M.D. Tenn. 2011) .................................................................................. 11

*Wright v. Adventures Rolling Cross Country, Inc.*,
    No. 12 Civ. 0982, 2012 WL 2239797 (N.D. Cal. June 15, 2012) ............................................. 7

# PRELIMINARY STATEMENT

The Court conditionally certified this case as a collective action under Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), notice issued on February 8, 2019, and the response period closes on April 9, 2019.[1] Since then, Plaintiffs have become aware of misleading and improper communication between Defendant and Defendant's agents and Class Members, spurring fears of retaliation for joining the lawsuit. First, putative opt-in and opt-in plaintiffs have complained in at least four stores across three states that they fear retaliation for joining the lawsuit, and/or that Store Managers or District Managers have made misleading statements that the lawsuit "doesn't apply to them" or that joining the lawsuit would be "fraud." Second, after Plaintiffs noticed Defendant of these communications, Defendant improperly instructed managers to instruct their employees to contact Human Resources staff with questions about the lawsuit, rather than Plaintiffs' counsel and in direct contravention of the Notice Approved by the Court. See Order Approving 216(b) Notice (ECF No. 58); Declaration of Molly Brooks in Support of Joint Motion for Approval of Proposed 216(b) Notice, Ex. 1 (ECF No. 56-1) ("Approved Notice") at 3 (instructing potential opt-in plaintiffs to contact Plaintiffs' counsel with questions). Third, Plaintiffs' counsel have received reports that Human Resources staff have contacted employees at one store location to inquire whether the employees had joined the lawsuit, thereby intimidating them.

To address these improper communications, Plaintiffs requested that Defendant send a message to Store Managers and District Managers stating that retaliation is prohibited, and instructing managers to refer Hourly Workers to Plaintiffs' counsel if they have questions about

---

[1] The notice period extends to 60 days from remailing for any collective members whose notice was re-mailed.

the lawsuit.  Defendant refused.  The parties met and conferred to discuss the issue, and the Defendant continued to refuse to issue any corrective communication either to its managers or to Hourly Workers currently employed by Defendant.

Plaintiffs therefore respectfully request that the Court authorize corrective notice to the putative collective, prohibit Defendant or its agents from discussing the lawsuit with collective and putative collective members, and order Defendant to issue a corrective communication to its managers, to mitigate the chilling and misleading impact of Defendant's communications with putative plaintiffs to date.  Plaintiffs also request that the Court extend the opt-in period by thirty (30) days to allow for dissemination of the corrective notice, and to afford putative plaintiffs who may have been intimidated previously the opportunity to opt in.

## PROCEDURAL HISTORY

Plaintiffs filed the Complaint in this action on May 30, 2018, alleging that Defendants failed to pay them and similarly situated employees minimum wages and overtime compensation in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*  *See* Compl. (ECF No. 1) ¶¶ 4-10.

On December 5, 2018, the Court granted conditional certification pursuant to Section 216(b) of the FLSA and authorized notice to a nationwide collective of current and former hourly, non-exempt employees since December 5, 2015, whose titles include, but are not limited to, Sales Associates, Visual Associates, eCommerce Fulfillment Associates, Custodian Freight Associates, Counter Managers, Cosmetic Sales Managers, Beauty Advisors, and Assistant Store Managers ("Hourly Workers").  *See* Memorandum Opinion (ECF No. 50) at 1, 14; Order (ECF No. 51).

After the Court approved the format of the notice, *see* Order Approving 216(b) Notice (ECF No. 58), Plaintiffs issued notice via a third-party administrator on February 8, 2019.  The close of the opt-in period is currently April 9, 2019 for collective members whose notice was not

2

Case 3:18-cv-00503   Document 90   Filed 03/27/19   Page 6 of 18 PageID #: 10440

re-mailed, and 60 days from remailing for any collective members whose notice was re-mailed. *See* Approved Notice.

## STATEMENT OF FACTS

On or around February 11, 2019, a putative opt-in Plaintiff in Georgia contacted Plaintiffs' counsel, stating that her Store Manager told her the instant case did not apply to their particular store, and that it would be "fraud" for employees at that store to join the lawsuit. Declaration of Molly Brooks in Support of Motion for Corrective Notice ("Brooks Decl.") ¶ 3.[2] Plaintiffs' counsel immediately contacted Defendant's counsel to alert them to the issue. Brooks Decl. ¶ 3, Ex. A. Defendant's counsel requested the names of particular Store Managers involved, but Plaintiffs' counsel was unable to reveal the names of the particular store or the Store Managers due to the complainant's fear of retaliation. Brooks Decl. ¶ 4, Ex. A. Rather, Plaintiffs' counsel requested that Defendant issue a communication across all of its stores including a notice to the store employees that any kind of retaliation for asking questions about the lawsuit, discussing the lawsuit, or joining the lawsuit is strictly prohibited and is against the law. *Id.*

On February 12, 2019, Defendant's counsel forwarded to Plaintiffs' counsel an email communication sent from Defendant's Store Operations group to each store and each district manager, which read as follows:

> *This is a reminder that associates will be receiving notice about a class-action lawsuit against Stage. This notice, which will be delivered by USPS and email, is required by the court but does not indicate that the lawsuit will be successful.*
>
> *If an associate asks you about the lawsuit or the notice he/she has received, you may say ONLY the following:*

---

[2] Unless otherwise indicated, all Exhibits referenced herein are attached to the Brooks Decl.

- *you cannot offer any advice on what the associate may or should do with the notice;*
- *Stage will not retaliate against any associate in connection with this or any lawsuit;*
- *any associate who has additional questions or concerns may contact their Human Resources Business Partner; and*
- *it is Stage's position that it complies with all applicable laws.*

*DO NOT discuss anything else with any associate regarding the lawsuit, such as*
- *why the associate received the notice;*
- *whether the notice or the lawsuit is legitimate;*
- *what the associate may or should do about the notice; or*
- *whether the associate is eligible for or will receive money if they participate in the lawsuit.*

*Again, if you or any other associate wants to speak to someone at Stage about this matter, they may contact their assigned Human Resources Business Partner.*

Brooks Decl. ¶ 5, Ex. B.  Plaintiffs then requested that Defendant issue a second communication to convey that Stage and its employees are prohibited from retaliating against any employees for asking about or exercising their rights to join the lawsuit, and to ensure that employees would be told, as is clearly indicated on the Court-authorized notice, to contact the notice administrator or Plaintiffs' counsel, rather than Defendant's HR department, with questions.  Plaintiffs requested the following language specifically:

> Please be advised that Stage and its employees are prohibited by law from retaliating against employees for asking about the lawsuit or exercising their rights to join the lawsuit.  You may not discourage employees from joining the lawsuit or interfere with their rights to join the lawsuit.  If an employee has additional questions about the lawsuit that are *not* directed to Stage, including whether to join the lawsuit, please direct them to the notice administrator or Plaintiffs' counsel listed on their notice.

Brooks Decl. ¶ 6, Ex. C.

On or around February 14, 2019, the notice administrator contacted Plaintiffs' counsel to report that a collective member working in Texas had contacted the administrator to say she feared retaliation for joining the lawsuit.  Brooks Decl. ¶ 7.  Plaintiffs' counsel immediately

4

contacted Defendant's counsel regarding the complaint and requested again that Defendant's counsel issue a follow-up communication to its managers regarding retaliation and instructing employees that they may contact Plaintiffs' counsel for questions about the case. Brooks Decl. ¶ 8, Ex. D. In response, Defendant's counsel disagreed that the communication it had forwarded to Plaintiffs was inadequate, stated that Defendant issued another communication regarding retaliation but that it was privileged, and requested that Plaintiffs provide details about specific stores where employees had complained. Brooks Decl. ¶ 9, Ex. E.

Meanwhile, a third putative opt-in plaintiff working at a store in Round Rock, Texas, reported to Plaintiffs' counsel that multiple employees at her store feared retaliation and that she believed this was due to the District Manager. Brooks Decl. ¶ 10. Plaintiffs' counsel disclosed the name of this store to Defendant with the permission of the complaining employee, requested more information regarding the privileged communication sent to managers, and asked again that Defendant issue the follow-up communication to its managers that Plaintiffs had requested. Brooks Decl. ¶ 11, Ex. F. Defendant's counsel refused to provide additional information regarding its privileged communication with managers beyond that it was sent to District and Store Managers and refused to issue further communications to all managers on the topic. Brooks Decl. ¶ 12, Ex. G.

Shortly after Plaintiffs reported to Defendant that a putative opt-in had complained that employees in Defendant's Round Rock, Texas store feared retaliation, Plaintiffs' counsel received reports that Defendant's Human Resources employees had begun calling multiple putative opt-in plaintiffs who worked at the Round Rock store and inquired whether or not these employees had joined the lawsuit, thereby intimidating them. Brooks Decl. ¶ 13. Additionally, a putative opt-in plaintiff working in New York contacted Plaintiffs' counsel to complain that her

5

District Manager was discouraging employees from opting into the lawsuit by suggesting that the lawsuit did not apply to them. Brooks Decl. ¶ 14. Plaintiffs' counsel reported both of these issues to Defendant's counsel on or around March 5, 2019. Brooks Decl. ¶ 15, Ex. H. Defendant continued to refuse to issue any kind of corrective notice to its managers. Brooks Decl. ¶ 16, Ex. H. In a final effort to reach agreement, Plaintiffs' counsel arranged a meet and confer call to address the issue on March 7, 2019, but even after this additional telephone meeting, the parties remained at impasse. Brooks Decl. ¶ 17.

## ARGUMENT

**I. Defendant and Its Agents Must Cease Communication with Plaintiffs and Potential Plaintiffs Regarding the Lawsuit.**

The Court has the authority to stop and correct misinformation and threats of retaliation that chill participation in the lawsuit. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989) ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands," and "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). The Court may limit communications between a party and potential class members based on "specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Frye v. Baptist Mem. Hosp., Inc.*, No. 07 Civ. 2708, 2008 WL 2117264, at *4 (W.D. Tenn. May 20, 2008); *see also Potts v. Nashville Limo & Transport, LLC*, No. 14 Civ. 1412, 2016 WL 1622015, at *13 (M.D. Tenn. Apr. 19, 2016) ("Where communications are misleading, coercive, or an improper attempt to undermine

6

the class action by encouraging class members not to participate in the suit, they may be limited by the court . . . ."). "An order limiting contacts is justified upon a finding of 'a likelihood of serious abuses,'" though "[a]ctual harm need not be proven." *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009) (quoting *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994)).

Courts have banned the defendant from continued communication with potential plaintiffs about the lawsuit in similar circumstances as here, where a defendant's communications with class members or potential collective members are misleading or interfere with potential plaintiffs' rights. *See Potts*, 2016 WL 1622015, at *16 (prohibiting defendants from communicating with class members or putative plaintiffs regarding the lawsuit because defendants improperly conveyed settlement offers to class members and discouraged contact with plaintiffs' counsel); *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 669 (E.D. Tex. 2003) (enjoining defendants "from making any ex-parte communications with absent class members regarding this action until the end of trial" after defendants sent misleading letter to employees regarding lawsuit).

Misleading or potentially abusive communications from only one or a few selected agents of defendant are sufficient to warrant a ban on unilateral communication between defendant and class members. *See Stranksy v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1110 (D. Colo. 2013) (restricting communications with opt-ins and ordering corrective notice when defendant's managers and supervisors communicated with potential opt-in plaintiffs regarding conditional certification notice); *Wright v. Adventures Rolling Cross Country, Inc.*, No. 12 Civ. 0982, 2012 WL 2239797, at *6 (N.D. Cal. June 15, 2012) (communications from two of defendant's employees were sufficient to "pose[] a realistic danger that participation in the

7

lawsuit will be chilled" and to justify a corrective notice); *Ojeda-Sanchez*, 600 F. Supp. 2d at 1379-81 (prohibiting further communication between defendant, and its employees and agents, and plaintiffs, potential plaintiffs, and opt-in plaintiffs, where one of defendant's agents communicated with several class members while seeking their releases of certain documents and told one plaintiff that "the lawsuit would be futile"); *Romano v. SLS Residential, Inc.*, 253 F.R.D. 292, 294-95, 299 (S.D.N.Y. 2008) (banning further communications with class members where certain defendants called some putative class members and misleadingly suggested their medical records would be made public by the lawsuit).

Similar to the misleading communications by Defendant's agents in *Ojeda-Sanchez* and the misleading letter in *Belt*, Plaintiffs' counsel have received multiple reports from different stores across different states of misleading and abusive communications from managers that putative plaintiffs should not join the lawsuit because it "does not apply" to them and joining would constitute "fraud." *See Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1230-31 (S.D. Ala. 2008) ("An across-the-board ban on communications with putative class members may be appropriate where the abusive contact consists of telling lies to persuade an employee not to opt in . . . ."). These reports from different stores, including reports that District Managers, who oversee multiple stores, are sending misleading messages to employees, warrant an order restricting Defendant and its agents from discussing the lawsuit with opt-in and putative opt-in plaintiffs.

Defendant's Operations group has instructed managers to communicate misleading information to employees – specifically, that plaintiffs and putative plaintiffs should contact Defendant's Human Resources staff, rather than Plaintiffs' counsel or the notice administrator, with questions about the lawsuit. *See Potts*, 2016 WL 1622015, at *14 ("Defendants may not

8

Case 3:18-cv-00503   Document 90   Filed 03/27/19   Page 12 of 18 PageID #: 10446

omit details or fail to provide relevant information regarding the plaintiffs' claims when communicating with class members, and courts have found settlement communications to be misleading when they . . . fail to provide contact information for the plaintiffs' counsel."). Instructing employees to contact Defendant's HR staff regarding the lawsuit threatens to interfere with opt-in plaintiffs' attorney-client relationship with Plaintiffs' counsel and offers HR staff the opportunity for unilateral, unsupervised communications with plaintiffs and potential plaintiffs that is rife with potential for abuse. *See id.*, 2016 WL 1622015, at *13-14 (noting that a "'unilateral communications scheme . . . is rife with potential for coercion,' 'particularly when class members are contacted directly and in person'" (citations omitted)); *see also Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) (unsupervised communications from defendant "relegate[] the essential supervision of the court to the status of an 'afterthought.'").

In addition to being misleading to potential opt-in plaintiffs, the communication encouraging employees to consult HR with questions about the lawsuit threatens to intimidate them, mislead them, and chill participation in the suit due to the inherently coercive nature of the employment relationship. *See Potts*, 2016 WL 1622015, at *14 ("[T]he potential for coercion and abuse of the class action is especially high when there is an ongoing business relationship between the two parties, particularly where the relationship is one of employer to employee."); *Belt*, 299 F. Supp. 2d at 668 (communications from employer to employees "have heightened potential for coercion"); *Ojeda-Sanchez*, 600 F. Supp. 2d at 1379-80 (unilateral and unsolicited contact with class members threatened to "sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal"). In fact, Plaintiffs' counsel have received reports that Defendant's Human Resources staff has

9

already intimidated opt-in plaintiffs and potential plaintiffs in Round Rock, Texas by calling employees directly to inquire whether they have joined the lawsuit. Brooks Decl. ¶ 13.

Defendant and its agents have had misleading and abusive communications with the putative collective to date via a nationwide instruction to managers, and Plaintiffs have received reports of additional abusive communications across multiple stores. Plaintiffs request that the Court order Defendant to stop communicating with opt-in and putative opt-in plaintiffs regarding the lawsuit, with the exception of the corrective communication requested by Plaintiffs below.

## II.     Defendant's Improper Communications to Plaintiffs and Potential Plaintiffs Warrant Corrective Notice.

In addition to banning further communications between Defendant and its agents and class members, the Court should order corrective notice to both Defendant's managers and to putative and opt-in plaintiffs. Courts regularly use corrective notice to mitigate the effects of misleading and abusive prior communications to class members. *See, e.g.*, *Belt*, 299 F. Supp. 2d at 669, 674-76 (ordering defendant to issue corrective notice clarifying that misstatements in prior communications regarding lawsuit were untrue); *Romano*, 253 F.R.D. at 299 (ordering that corrective notice be sent to all putative class members to remedy misleading communications from defendants to selected class members); *Randolph v. PowerComm Constr., Inc.*, 41 F. Supp. 3d 461, 469 (D. Md. 2014) (requiring corrective notice to opt-outs to remedy misleading and abusive communications encouraging plaintiffs to opt out); *Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 723-24 (W.D. Ky. 1981) (requiring corrective notice to opt-outs "setting forth [court's] finding of impropriety on [defendant's] part"). Similar to the corrective notice issued in *Belt*, Plaintiffs request a notice to all putative opt-in and opt-in plaintiffs that simply clarifies that the misleading statements Defendant and its agents have made or may have made to putative opt-in and opt-in plaintiffs are not true. *Compare Belt*, 299 F. Supp. 2d at 674-

76 *with* Exhibit I. Further, Plaintiffs request that Defendant issue a corrective communication to managers, notifying them that a) Stage and its employees are prohibited by law from retaliating against employees for asking about the lawsuit or exercising their rights to join the lawsuit, b) managers may not discourage employees from joining the lawsuit or interfere with their rights to join the lawsuit, and c) if an employee has additional questions about the lawsuit they should be directed to Plaintiffs' counsel listed on their notice.

### III. Extending the Notice Period Is Necessary to Mitigate Prejudice from Defendant's Misleading Communications.

Given that the opt-in period for most putative plaintiffs ends in approximately two weeks, a thirty (30) day extension of the opt-in period following the issuance of corrective notice is necessary to enable putative plaintiffs to benefit from the corrective notice. *See Belt*, 299 F. Supp. 2d at 669-70 (extending opt-in period by 30 days for class members who received misleading communications); *Impervious Paint Indus., Inc.*, 508 F. Supp. at 724 (giving plaintiffs receiving corrective notice "a period equal to the original opt-out period within which to make a new decision").

Allowing plaintiffs additional time to opt in also serves the interest of judicial economy and the remedial purposes of the FLSA, and does not prejudice the Defendant. *Cf. Woods v. RHA Tenn. Group Homes, Inc.*, 803 F. Supp. 2d 789, 802 (M.D. Tenn. 2011) (permitting claims filed a few weeks past the opt-in deadline as "allowing these plaintiffs to join the suit serves the interest of judicial economy, because it would be needlessly duplicative to require them to file separate suits against the defendant[,] the defendant will not be unduly prejudiced by the inclusion of these plaintiffs, [and] because this litigation did not substantially progress [in the intervening time period]"); *Maddy v. General Elec. Co.*, No. 14 Civ. 0490, 2015 WL 1344626, at *3-4 (D.N.J. Mar. 23, 2015) (extending opt-in period by 30 days where defendant sent

11

communication that, although not obviously intended to deter workers from opting into the lawsuit, suggested the potential for negative consequences associated with participation); *Veliz v. Cintas Corp.*, No. 03 Civ. 1180, 2004 WL 2623909, at *3 (N.D. Cal. Nov. 12, 2004) (ordering corrective notice and extending opt-in period where letter from defendant to employees disparaged lawsuit); *Sloan v. Ameristar Casinos, Inc.*, No. 12 Civ. 01126, 2013 WL 1127062, at *1 (D. Colo. Mar. 18, 2013) (noting that court ordered corrective notice and 45-day extension of opt-in period in response to defendant's coercive and misleading letter to class members); *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 573 (D.N.J. 2014) (highlighting importance that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate" (quoting *Hoffman-La Roche*, 493 U.S. at 170)).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) authorize Plaintiffs to issue the corrective notice to the putative collective contained in Exhibit I; (2) prohibit Defendant or its agents from discussing the lawsuit with collective and putative collective members; (3) order Defendant to issue a corrective communication to its managers stating that a) Stage and its employees are prohibited by law from retaliating against employees for asking about the lawsuit or exercising their rights to join the lawsuit, b) managers may not discourage employees from joining the lawsuit or interfere with their rights to join the lawsuit, and c) if an employee has additional questions about the lawsuit they should be directed to Plaintiffs' counsel listed on their notice; and (4) extend the opt-in period by thirty (30) days from the issuance of corrective notice, to allow for dissemination of the corrective notice and to afford putative plaintiffs who may have been intimidated previously the opportunity to opt in.

12

Dated: March 27, 2019　　　　**OUTTEN & GOLDEN LLP**
New York, New York

By: /s/ Molly Brooks
**OUTTEN & GOLDEN LLP**
Molly Brooks (admitted *pro hac vice*)
Deirdre Aaron (admitted pro hac vice)
Elizabeth V. Stork (admitted pro hac vice)
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Email: MB@outtengolden.com
Email: estork@outtengolden.com
Email: daaron@outtengolden.com

Laura Iris Mattes (admitted *pro hac vice*)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: imattes@outtengolden.com

Charles P. Yezbak, III (TN Bar No. 18965)
**YEZBAK LAW OFFICES PLLC**
2002 Richard Jones Rd. Suit B-200
Nashville, Tennessee 37215
Telephone: (615) 250-2000
Email: yezbak@yezbaklaw.com

*Attorneys for Plaintiffs and the Collective*

13

Case 3:18-cv-00503   Document 90   Filed 03/27/19   Page 17 of 18 PageID #: 10451

Dated: March 27, 2019　　　　**OUTTEN & GOLDEN LLP**
New York, New York

By: /s/ Molly Brooks
**OUTTEN & GOLDEN LLP**
Molly Brooks (admitted *pro hac vice*)
Deirdre Aaron (admitted pro hac vice)
Elizabeth V. Stork (admitted pro hac vice)
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Email: MB@outtengolden.com
Email: estork@outtengolden.com
Email: daaron@outtengolden.com

Laura Iris Mattes (admitted *pro hac vice*)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: imattes@outtengolden.com

Charles P. Yezbak, III (TN Bar No. 18965)
**YEZBAK LAW OFFICES PLLC**
2002 Richard Jones Rd. Suit B-200
Nashville, Tennessee 37215
Telephone: (615) 250-2000
Email: yezbak@yezbaklaw.com

*Attorneys for Plaintiffs and the Collective*

# CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2019 the above document, along with Plaintiffs' Motion for Corrective Notice, the Declaration of Molly Brooks in Support of Plaintiffs' Motion for Corrective Notice and accompanying exhibits, and Plaintiffs' Proposed Order Authorizing Corrective Notice, were filed electronically through the ECF system, are available for viewing and downloading from the ECF system, and were sent electronically to the registered participants identified on the Notice of Electronic Filings, including, Defendant's counsel of records as follows:

John H. Lassetter
Lyndsey M. Marcelino
Littler Mendelson, P.C.
1300 IDS Center
80 S 8th Street
Minneapolis, MN 55402-2136

Malcolm Levy Leatherman
Littler Mendelson, P.C.
333 Commerce Street
Suite 1450
Nashville, TN 37201

/s/ Molly Brooks
Molly Brooks (admitted *pro hac vice*)
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
mb@outtengolden.com