**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **Maya Crosby and Deneen Patton, on behalf of themselves and all those similarly situated,** | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-00503 |
| | ) | District Judge Waverly D. Crenshaw, Jr. |
| v. | ) ) | Magistrate Judge Alistair Newbern |
| **Stage Stores, Inc.,** | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR CORRECTIVE NOTICE**

## I.  SUMMARY OF ARGUMENT

Conveniently timed to coincide with the end of the 60-day notice period in this matter, Plaintiffs bring this motion seeking permission to send what amounts to a second, unwarranted reminder notice to nearly 40,000 putative collective members and to extend the opt-in notice period another 30 days.  Plaintiffs further seek to unjustifiably restrict Stage's[1] communications with its employees regarding this lawsuit.  Plaintiffs are demanding this extraordinary relief based on vague, unsubstantiated allegations levied by Plaintiffs' Counsel of alleged improper interference with the notice process in a mere four stores in two states (out of 800 stores across 42 states).  Tellingly, Plaintiffs delayed bringing this motion seeking another notice and an extension of the opt-in period until this juncture, despite these alleged complaints arising in February and early March.  The Court should recognize this motion for what it is – a transparent

---

[1] Named-Plaintiffs and all others they purport to represent were not employed by Stage Stores, Inc., but were instead employed by Specialty Retailers, Inc.  Specialty Retailers, Inc., owns and operates the stores where Plaintiffs and the proposed collective worked, and employs the employees in those stores (*see* Doc. 21, n. 1).  For purposes of this Opposition, the employing entity, Specialty Retailers, Inc. is referred to as "Stage."

attempt to market this litigation and unnecessarily stir up litigation by abusing the notice process. Plaintiffs' motion should be denied.

In order to obtain the extraordinary relief they seek, Plaintiffs must demonstrate, at a minimum, "good cause" by showing **<u>clear evidence</u>** that Stage made communications to putative collective members that contained false, misleading, or confusing statements. Plaintiffs have not presented any evidence, let alone clear evidence, of such statements.

Incredibly, Plaintiffs have not submitted any testimony from any putative class member to support these allegations. Rather, Plaintiffs seek to rely on their own counsel's testimony alleging that Plaintiffs' Counsel and the claims administrator have received complaints from four putative collective members from one store in Georgia, one store in New York, and two stores in Texas. *See* ECF No. 91 at ¶¶ 3, 7, 10, 14. The substance of two of these complaints amounts to nothing more than alleged "fear" of retaliation, without providing any reason for this alleged fear. *See id.*¶¶ 7, 10. The other complaints vaguely allege that management in two stores has discouraged participation in the lawsuit. *See id.* ¶¶ 3, 14. Again, no putative collective member has submitted any testimony to substantiate these claims. Such unsubstantiated and unspecified fears of retaliation by unidentified individuals cannot be considered "clear evidence" of wrongdoing by Stage and does not satisfy Plaintiffs' burden. Certainly, these vague complaints from four stores do not justify resending notice to tens of thousands of putative collective members who could not have possibly been affected by the alleged interference.

Stage conducted a thorough and appropriate investigation into Plaintiffs' allegations that employees "feared" retaliation in the only store Plaintiffs would specifically identify. None of the employees in that store reported any concerns or expressed any fear of retaliation. Additionally, Stage has repeatedly instructed members of management to avoid communications

with members of the putative collective regarding the lawsuit and that they are not to retaliate or interfere with any putative collective members' participation in the lawsuit. In short, the only affirmative evidence before the Court establishes that Stage **has not** interfered with the notice process and has taken affirmative steps to ensure that putative class members are free to choose whether or not to participate in this lawsuit without interference or retaliation. Based on this evidence, Plaintiffs should not be allowed to send yet another notice to the putative collective, as such relief would amount to nothing more than an abuse of process and an unwarranted solicitation of additional clients on behalf of Plaintiffs' Counsel.

## II.     RELEVANT FACTS

### A.     Notice Is Provided Pursuant to the Court's Order.

On December 5, 2018, the Court granted conditional certification of an FLSA collective action and authorized nationwide notice to current and former hourly, non-exempt employees. *See* Docs. 50 and 51. The Court specifically ordered that notice issue by mail and e-mail to the 39,843 putative collective members, that all 9,901 current employees receive the notice with their paystub, and that the notice be posted on a website. Doc. 50, p.12. The Court further ordered that a reminder postcard and email be sent halfway through the notice period to all putative collective members who had not opted-in by that point. *Id.* Plaintiffs did not request an order limiting Stage's communications with its employees, and the Court entered no order limiting Stage's communications with its employees.

On February 8, 2019, notice was sent to the 39,843 putative class members, 9,901 of whom are current Stage employees, by the claims administrator by mail and email. *See* Declaration of John Lassetter ISO Response in Opposition to Motion for Corrective Notice, filed

concurrently ("Lassetter Decl."), at ¶ 2. Stage also distributed the notice to current employees on February 15, 2019. *Id.* The notice provided, in part,

| 7. Will my participation affect my employment? |
| --- |

No. Federal law prohibits an employer from firing or in any way retaliating against you because you have joined this lawsuit.

| 8. How can I get more information? |
| --- |

If you have any questions, or would like more information, you may write, e-mail, or call Plaintiffs' counsel:

| Molly Brooks | Laura Iris Mattes | Charles Yezbak |
| --- | --- | --- |
| Elizabeth Stork | OUTTEN & GOLDEN LLP | YEZBAK LAW OFFICES PLLC |
| OUTTEN & GOLDEN LLP | One California Street, 12th | 202 Richard Jones Rd. Suite B-200 |
| 685 Third Avenue, 25th Floor | Floor | Nashville, Tennessee 37215 |
| New York, NY 10017 | San Francisco, California | Tel: (615) 250-2000 |
| Tel: (212) 245-1000 | 94111 | yezbak@yezbaklaw.com |
| stagestoresunpaidwages@outteng | Tel: (415) 638-8800 | |
| olden.com | stagestoresunpaidwages@outt | |
| | engolden.com | |

*Id.*, Ex. 1. The opt-in period ran for 60 days, from February 8, 2019 to April 9, 2019.

**B.      Defendant Sends a Privileged Communication to Its Store Managers and District Managers Regarding the Impending Notice**

On or around January 11, 2019, Stage's Legal Department sent out a privileged and confidential memorandum to its District Managers and Store Managers regarding the notice to putative collective members. Declaration of Tim Moyer ("Moyer Decl."), ¶ 3. Generally, that communication informed District Managers and Store Managers that an employee's decision to participate in the lawsuit would have no effect on their employment with Stage, that Stage would not tolerate any retaliation against any employee in connection with the lawsuit, and that any employee who felt that they were not being treated property should contact their Human Resources Business Partner. *Id.* These points were emphasized more than once in this memorandum. *Id.*

**C.** **Plaintiffs' Counsel Demands a Communication to All Managers at Stage's 800 Stores Based on a "Suspicion" that Managers "May" Be Discouraging Employees from Opting In.**

Three days after notice was mailed, at 6:50 p.m. on February 11, 2019, Plaintiffs' Counsel emailed Stage's Counsel stating it had come to Plaintiffs' Counsel's attention that "Store Managers have been discouraging employees from opting into the lawsuit by, among other things, telling putative collective members that the issue in the lawsuit doesn't pertain to them and that it would be 'fraud' to opt in." *See* Doc. 91-1 (Declaration of Molly Brooks ISO Motion for Corrective Notice ["Brooks Decl."]), Ex. A. Plaintiffs' Counsel demanded that Stage communicate "to its Store Managers and District Managers as soon as possible that they may not interfere with putative collective members' decisions to opt in, that they must direct all questions about the lawsuit to Plaintiffs' Counsel or the notice administrator, and that they are not to express an opinion on the outcome of the lawsuit to their employees." *Id.* Stage's Counsel responded at 7:55 p.m. that same night, indicating that he would "definitely address this ASAP" and asking if any particular Store Managers were implicated. *Id.*

The next day, Plaintiffs' Counsel indicated that they had only heard these allegations from "one location in Georgia." *See id.* Despite having only received complaints from one store (and, necessarily, one Store Manager), Plaintiffs' Counsel demanded that "Stage issue a communication across all stores "because we *suspect* this *may* be happening at other stores as well." *Id.* (emphasis added).

**D.** **Stage Promptly Complies with Plaintiffs' Demand and Sends a Communication to its Managers.**

Stage operates 29 stores in Georgia. Moyer Decl. ¶ 4. As a result, without knowing which Store Manager in particular had allegedly acted inappropriately, Defendant had no practical means to investigate Plaintiffs' Counsel's vague allegations. *Id.*

5

Nonetheless, out of an abundance of caution and to ensure Store Managers and District Managers understood they were not to interfere in putative class members' decision regarding participation in this lawsuit, Stage emailed a communication to each of its District Managers and Store Managers on February 12, 2019. *See* Moyer Decl., ¶ 5, Ex. A. This communication specifically directed the Store Managers and District Managers not to discuss the lawsuit with employees and further instructed them to advise any employees who approached the Store Managers or District Managers with questions that they would not be retaliated against in connection with the lawsuit and that they could contact Human Resources if they wished to speak to anyone at Stage about the lawsuit. *Id.*

E. **Plaintiffs' Counsel Relays a Second Vague Complaint, Demands Additional Company-Wide Communications and Refuses to Identify the Implicated Stores.**

On February 13, 2019, Plaintiffs' Counsel responded with an additional demand for another communication to Stage managers, stating simply that the "following additional information also needs to be conveyed." Doc. 91-3 (Brooks Decl., Ex. C). As part of this demand, Plaintiffs' Counsel demanded that all managers *approached by employees* with questions direct the employees to contact only Plaintiffs' Counsel or the claims administrator. *Id.* Shortly thereafter, on February 14, 2019, Plaintiffs' Counsel again demanded that a second communication be sent, and also stated as support for her demand that she had received a "report of fear of retaliation for joining the lawsuit coming out of Texas." Doc. 91-4 (Brooks Decl., Ex. D).

Stage's Counsel responded to Plaintiffs' Counsel that same day disagreeing that the prior evening's communication was inadequate and indicating that Stage had already sent two communications to Store Managers and District Managers explicitly instructing them not to retaliate against employees. Doc. 91-5 (Brooks Decl., Ex. E). Stage's Counsel further indicated

that Stage would address the concerns raised in the implicated stores if Plaintiffs' Counsel would identify those stores.[2]

Plaintiffs' Counsel responded *two weeks later*, on February 28, 2019, demanding to see a copy of Stage's privileged communications with management and identifying only one of the two stores from whom the complaints of a "fear of retaliation" had allegedly arisen.  Doc. 91-6 (Brooks Decl., Ex. F).

Stage's Counsel responded the next day, indicating that Stage would investigate the allegations related to the Round Rock, Texas store identified.  Doc. 91-7 (Brooks Decl., Ex. G). Stage's Counsel further emphasized that Stage could not investigate the allegation from the second store, since Plaintiffs' Counsel refused to identify the store.  *Id.*  Finally, Stage's Counsel declined to produce a privileged communication from Stage's Legal Department to District Managers and Store Managers and disagreed with Plaintiffs' Counsel's contention that Stage must direct all questions regarding the lawsuit to either Plaintiffs' Counsel or the claims administrator.  *Id.*

**F.  Stage Investigates Plaintiffs' Allegations in the Round Rock, Texas Store.**

Stage assigned an experienced Human Resources Business Partner to investigate the allegations of interference in the Round Rock, Texas store.  Moyer Decl. ¶ 7.  This investigator has interviewed all but one of the hourly employees on the Round Rock, Texas store's payroll.[3] Declaration of Eddie Miller ("Miller Decl.") Miller Decl. ¶ 6.  Contrary to Plaintiffs' allegations, the investigator did not ask the employees if they had opted in to the case during these interviews, nor did he ask employees if they were planning to do so.  Miller Decl. ¶ 4.  Rather, the investigator assured each employee that whether to participate in the lawsuit was his or her

---

[2]  Stage operates 218 stores in Texas.  Moyer Decl. ¶ 9.
[3]  The remaining hourly associate is not scheduled to work again until April 13, 2019.

decision and that Stage would not tolerate any retaliatory conduct as a result of any employee's participation in the lawsuit. *Id.*

Every employee with whom the investigator spoke denied that any Store Manager or District Manager had said anything to them about them not being able to participate in the lawsuit or had otherwise discouraged them from participating in the lawsuit. Miller Decl. ¶ 5. Each employee also denied any retaliatory conduct on the part of any Store or District Manager. *Id.*

Other than the allegations relayed by Plaintiffs' Counsel, Stage has not received any complaints from any employee that Store Managers or District Managers are discouraging participation in this lawsuit or retaliating against employees for participating in this lawsuit. Moyer Decl. ¶10.

### G. Plaintiffs' Counsel Relays Vague Complaints From Two Additional Stores, Which They Refuse to Identify.

On March 5, 2019, Plaintiffs' Counsel alleged that they had received additional complaints from another store in Texas and a store in New York. Doc. 91-8 (Brooks Decl., Ex. H). Plaintiffs' Counsel alleged that the four complaints they had received "suggest[ed] a widespread problem." *Id.*

Stage's Counsel responded that same day and re-iterated its request that Plaintiffs' identify the additional three stores so that Stage could investigate Plaintiffs' complaints. *Id.* Plaintiffs' Counsel continued to refuse to identify these stores, claiming Stage's investigation into the complaints in the Round Rock, Texas store constituted further interference. *Id.*

8

**H.** **Plaintiffs File Their Motion for Corrective Notice 13 Days Before the Opt-In Period Closes, Despite Opt-In Statistics Strongly Suggesting No Managers Have Interfered with the Opt-In Process.**

On March 27, 2019, over six weeks after first raising their vague allegations of interference, but only thirteen days before the opt-in period closed, Plaintiffs filed their motion seeking permission to send yet another notice to the entire putative collective (not just current employees) and to extend the opt-in period another 30 days. *See* Doc. 90, p. 16. Plaintiffs further seek an order prohibiting Stage and its agents from discussing the lawsuit with putative collective members and mandating that Stage send a communication to all managers stating that Stage and its employees are prohibited from retaliating against employees for asking about the lawsuit, that managers may not discourage employees from joining the lawsuit, and that if employees ask questions managers must direct them to Plaintiffs' Counsel. *See id.* Plaintiffs submit only the declaration of their attorney to support their Motion. *See* Doc. 91-9 (Brooks Decl., Ex. I). Remarkably, despite the extraordinary relief they are seeking, Plaintiffs have not submitted any testimony from any putative collective member alleging interference with the opt-in process or retaliation for participation in the lawsuit.

As of April 1, 2019, a total of 1,229 current employees have opted-in to this action out of approximately 6,700 total opt-ins. Lassetter Decl. ¶ 4. Overall, current employees have opted-in at rate of approximately 12.4%. *See* Lassetter Decl. ¶ 5. In New York, where one of the complaints Plaintiffs identified allegedly arose, the current employee opt-in rate is presently 21%, in Georgia, the current employee opt-in rate is 15% and in Texas, the current employee opt-in rate is approximately 12%. *See* Lassetter Decl. ¶ 6. These statistics, which are within the normal range of opt-in rates typically seen in similar cases, clearly undercut Plaintiffs' purported "suspicions" of widespread interference in these states or in Stage's stores generally and illustrate the inappropriate and unwarranted nature of the relief Plaintiffs seek.

9

## III. THE COURT SHOULD DENY PLAINTIFFS' MOTION BECAUSE PLAINTIFFS' HAVE NOT PRESENTED CLEAR EVIDENCE OF ABUSE OR COERCION.

### A. To Obtain an Order Restricting Stage's Communications, Plaintiffs Must Demonstrate Clear Evidence of Abuse or Coercion.

Plaintiffs' Motion does not fully state their burden for obtaining an order restricting Stage's communications. *See generally*, Doc. 90, pp.10-11 (citing *Frye v. Baptist Mem. Hosp.*, No. 07CV2708, 2008 WL 2117264 (W.D. Tenn. May 20, 2008)). Though Plaintiffs omit it from their Motion, the *Frye* court acknowledged that a district court may not restrict a party's communications with putative collective members without a "***clear record*** and ***specific findings*** that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Frye*, 2008 WL 2117264, at *4 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981); emphasis added). The *Frye* court further noted that that "the mere possibility of abuse does not justify adoption of a communications ban." 2008 WL 2117264, at *4 (citing *Gulf Oil*, 452 U.S. at 104); *see also, e.g., Lewis v. Huntington Nat. Bank*, 2011 WL 8964496, *3 (S.D. Ohio, Oct. 24, 2011) (applying *Gulf Oil* standard in case concerning 216(b) communications); *Jackson v. Papa John's USA, Inc.*, 2009 WL 650181, *1 (N.D. Ohio, Mar. 10, 2009) (same); *Talamantes v. PPG Industries, Inc.*, 2014 WL 4145405, *3 (N.D. Cal. Aug. 21, 2014) (same). "[G]ood cause is a necessary predicate to an order restricting [Stage]'s First Amendment rights." *Lewis*, 2011 WL 8964496, *4. "Good cause" examines the "severity and likelihood of the perceived harm" and is a threshold matter for restricting (or mandating) Stage's communications with its employees. *Id.*

Federal courts have summarized the type of "abusive practices" sufficient for a restraint on an employer's speech in the class or collective action context as: "communications that coerce prospective class members into excluding themselves from the litigation, communications that

contain false, misleading or confusing statements, and communications that undermine cooperation with or confidence in class counsel." *Id.*, at \*5 (internal citations omitted); *see also, e.g., Rogers v. Webstaurant, Inc.*, 2019 WL 691408, \*1 (W.D. Ky., Feb. 19, 2019) (noting court's prior denial of restraining order for "failure to submit evidence that the [challenged] communications were coercive, misleading, or abusive").

**B.** **To Obtain an Order Reopening the Opt-in Period and Authorizing Additional Class Notice, Plaintiffs Must Demonstrate Clear Evidence of Significant and Severe Circumstances.**

The Honorable Judge McKinley, District Court Judge for the Western District of Kentucky recently and succinctly stated the standard for reopening the class period and authorizing additional class notice:

> The Court may supervise the notice process, but in doing so "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).
> . . .
> The cases in this circuit and those from other courts nationwide that address the issue, or one similar, tend to **disfavor re-opening the notice period unless significant and severe circumstances so warrant**. *See Potts v. Nashville Limo & Transp., LLC*, No. 3:14-CV-1412, 2016 WL 1622015 (M.D. Tenn. Apr. 19, 2016) (re-opening the notice period based in part on "**clear evidence**" of the employer's attempted retaliation against an employee if he remained a claimant in the lawsuit); *Lewis v. Southeast Commercial. Cleaning, LLC*, No. 14-CV-00003, 2015 WL 5697219 (E.D. La. Sept. 28, 2015) (denying a motion to re-open and extend the opt-in period because plaintiffs failed to identify a single prospective claimant who wished to opt-in but was unable to do so); *Velasque-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448, 2016 WL 7429200 (E.D. N.C. Sept. 30, 2016) (noting that courts may reopen a notice period upon proper showings of misconduct).

*Rogers*, 2019 WL 691408 at \*2 (denying plaintiff's motion for supplemental class notice and to extend and re-open the opt-in period in FLSA collective action) (emphasis added); *see also, Jackson v. Papa John's*, 2009 WL 650181 at \*2-3 (holding that to warrant a court-approved corrective notice to putative collective members, the plaintiff, "as the moving party, bears the

11

burden of showing that the Defendants' communication was in some way coercive, misleading, or improper").

    **C.**    **Plaintiffs' Allegations of Reports of Fear of Retaliation Do Not Satisfy Their Burden.**

        **1.**    **Plaintiffs' Counsel's Declaration Is Not Evidence That Putative Collective Members Fear Retaliation.**

The only evidence Plaintiffs have submitted in support of their motion is their Counsel's declaration, in which she relays vague second hand, or in one instance, third hand allegations of interference and fear of reprisal. Plaintiffs' Counsel's purported recitation of these allegations amounts to nothing more than hearsay and is not evidence properly before the Court. *See Andretti v. Borla Performance Indus.*, 426 F.3d 824, 832 (6th Cir. 2005) (holding "[a]ttorney's declaration is not evidence of damages"); *Ramirez v. Bolster & Jeffries Health Care Grp.*, LLC, 277 F. Supp. 3d 889, 898 (W.D. Ky. 2017) (finding "affidavits executed by Plaintiffs' Counsel are not admissible evidence" and were based on hearsay, and would not be considered in ruling on pending motions for summary judgment); *see also West v. Bell*, 2004 U.S. Dist. LEXIS 32425, *153 (E.D. Tenn. Sep. 30, 2004) (recognizing that "counsel's argument is not evidence").

Because Plaintiffs have not properly placed *any* evidence of interference or retaliation before the Court, they clearly have not met their burden of presenting "clear evidence" that would warrant restricting Stage's communications with its employees or the even more extraordinary relief of extending the opt-in period. *See Jackson*, 2009 WL 650181 at *1-2 (denying plaintiff's request for protective order and corrective notice where plaintiff "put forth no evidence suggesting a need to limit Defendants' communication"). Notably, in *Rogers*, the Court denied plaintiffs' motion to re-open the opt-in period and issue additional class notice, even when plaintiffs submitted declarations from two putative collective members alleging that they had overheard management say they could see who joined the lawsuit and that other

12

employees had told them they feared joining the lawsuit. *See* 2019 WL 691408 at *3. The *Rogers* court noted that a "shear lack of clear evidence of wrongdoing" in denying this motion. *Id.* Plaintiffs' Counsel's personal belief falls far short of the evidence presented in *Rogers* and Plaintiffs' motion should be denied as a result.

### 2. Even Accepting Plaintiffs' Counsel's Declaration as Evidence, the Allegations are Vague and Do Not Satisfy Plaintiffs' Burden.

Even if Plaintiffs' Counsel's declaration was considered as evidence, Plaintiffs' claims of interference would still not rise to the extreme level necessary to justify restricting Stage's speech or extending the opt-in period with additional class notice. Plaintiffs' Counsel has testified regarding four complaints, two of which vaguely allege a "fear" of retaliation, without specifying any reason for such fear. *See* Brooks Decl., ¶¶ 7, 10. Plaintiffs have only vaguely claimed that management discouraged participation in one store in Texas and one store in New York, but have refused to identify the specific stores from which these complaints allegedly arose. *See id.* at ¶¶ 7, 14.

Unsubstantiated and vague complaints of management discouragement allegedly arising out of two of Stage's more than 800 stores cannot justify restricting Stage's communications with its employees or yet another notice of the lawsuit and re-opening the opt-in period. *See Rogers*, 2019 WL 61408, *3 (management comment that company could see who joined lawsuit insufficient to justify restricted communication additional notice). Additionally, vague allegations of a "fear" of retaliation do not justify such relief. *See id.* (finding that putative collective members' text messages which relayed a fear of retaliation were insufficient to re-open the class period and issue supplemental notice, explaining that employees "may very well fear retaliation by [defendant] even in the absence of threats or misconduct"); *see also Gulf Oil*, 452 U.S. at 104 (noting that "mere possibility of abuses does not justify routine adoption of a

13

communications ban"); *Young v. United States,* 2009 U.S. Dist. LEXIS 62765, at *8 (M.D. Tenn. Mar. 13, 2009) (Brown, M.J.) ("conclusory allegations, speculation, and unsubstantiated assertions are not evidence"). In short, the complaints Plaintiffs' Counsel has cited in her declaration fall far short of satisfying Plaintiffs' burden of presenting "clear evidence" of the type interference of retaliation that would justify the extraordinary relief Plaintiffs seek and Plaintiffs' motion should, therefore, be denied.

> **D.      Neither Stage's Appropriate Communications With Management, Nor Its Appropriate Investigation Into Plaintiffs' Allegations of Interference Justify the Relief Sought.**

Plaintiffs seek to grossly misconstrue both Stage's communications with its management team and its investigation into Plaintiff's allegations of interference in pursuit of the relief they seek. First, Plaintiffs allege that Stage's February 12 communication to its District Managers and Store Managers "instructed managers to communicate misleading information to employees – specifically, that plaintiffs and putative plaintiffs should contact Defendant's Human Resources staff, rather than Plaintiff's counsel or the notice administrator, with questions about the lawsuit." Doc. 90, p. 8. However, Stage's communication simply directs Store Managers and District Managers to direct an employee to Human Resources **if** an employee "wants to speak to someone at Stage about this matter." Moyer Decl., ¶ 5, Ex. A. It is entirely appropriate for Stage to direct internal inquiries about the lawsuit to its Human Resources group, who are better equipped to respond to such inquiries than management in the field. While employees have every right to contact Plaintiffs' Counsel or the claims administrator using the contact information provided to them in the notice and reminder notice, Stage is not, as Plaintiffs' Counsel suggests, under any obligation to direct employees to communicate with Plaintiffs' Counsel or the claims administrator. To require Stage to do so, would be tantamount to requiring Stage to send Plaintiffs' Counsel clients to sue Stage – a ridiculous result.

Numerous courts have recognized that similar communications <u>directly with putative collective members</u> were entirely appropriate. *See Frye v. Baptist Mem. Hosp., Inc.*, 2008 WL 2117264, at *4 (W.D. Tenn. May 20, 2008) ("the mere possibility of abuse does not justify adoption of a communications ban" and "in many cases there will be no problem [with communications to putative class members] requiring remedies at all." (Internal citations omitted)); *Carlson v. Leprino Foods Co.*, 1:05-CV-00798, 2006 WL 3231266, at *1 (W.D. Mich. Nov. 7, 2006) (finding defendant's memorandum it sent to all current employees did not rise to a level of coercion, noting plaintiffs' statement to putative collective members suggesting that employees had no other redress but to opt in to the action was "not true"); *Talamantes*, 2014 WL 4145405, *2, 6 (finding that employer's memorandum to putative collective members sent during the opt-in period describing the factual circumstances of the lawsuit and stating the employer's position, was not misleading or discouraging to putative collective members); *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652, *5-7 (N.D. Cal. Mar. 28, 2006) (finding defendant employer's Q&A document "not sufficiently misleading or coercive to justify the relief [of corrective notice] sought," where the defendant provided the Q&A document to potential plaintiffs in FLSA collective action, and informed employees it was their decision whether to speak to any lawyer that contacts them"); *Parks v. Eastwood Ins. Servs., Inc.*, 235 F.Supp.2d 1082, 1085 (C.D. Cal. 2002) (permitting communications by defendant that described the case and stated that employees **could contact defendant's counsel with questions**).

Stage's communication with management about which Plaintiffs complain was not even a direct communication with putative class members, and it appropriately directed internal inquiries regarding the lawsuit to Stage's Human Resources department. As demonstrated by the cases cited above, such a communication does not even come close to the level of coercion

required to justify restricting Stage's communications with its employees or the even more extreme relief of a corrective notice and re-opening the opt-in period.

Similarly, Plaintiffs claim that Stage's Human Resources staff "has already intimidated opt-in plaintiffs and potential plaintiffs in Round Rock, Texas by calling employees directly to inquire whether they have joined the lawsuit." Doc. 90, pp. 9-10. However, Stage's Human resources staff did nothing of the sort. Rather, the investigator conducted a thorough and legitimate inquiry into Plaintiffs' allegations of interference and retaliation in the Round Rock store; none of the employees in that store reported any interference, retaliation, or fear of any sort. It was entirely appropriate for Stage to conduct an investigation into Plaintiffs' allegations and this investigation certainly cannot be construed as coercive. *See Jackson*, 2009 WL 650181, *3 (holding employer's investigation of plaintiff's claims in FLSA collective action was not "coercive" simply because it investigated its own employees).

The cases upon which Plaintiffs seek to rely involve far more extreme and substantiated circumstances than Plaintiffs' Counsel's unsubstantiated and vague allegations in this matter. For example, in *Potts*, the defendants admitted to contacting opt-in members and offering to settle with them individually and plaintiffs presented declarations and audio and video recordings establishing that defendants: made false statements about having already settled with other putative collective members, failed to disclose that opt-in members might be entitled to relief if they proceeded with their claims, failed to correct employee statements indicating that employees believed they would lose their jobs if they participated in the lawsuit, and settled a claim with a putative collective member for only fifty dollars. *Potts v. Nashville Limo & Transport, LLC*, No. 14CV1412, 2016 WL 1622015, *2, 3, 5-6 (M.D. Tenn. Apr. 19, 2016) (Trauger, J.).

16

Similarly, in *Ojeda-Sanchez*, the plaintiffs presented evidence that management traveled out of state to a putative collective member's home, asked the putative collective member to sign a document waiving his rights to participate in the lawsuit and took pictures of the putative collective members family at his house. Plaintiffs also presented testimony from a putative collective member indicating that management called advised him that "those who had a lawsuit were not going to return to work with [the defendant]." *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1377-78 (S.D. Ga. 2009).

In *Belt*, the defendants initially argued that no party should be allowed to communicate with putative collective members regarding the lawsuit and then unilaterally mailed their own class notice to putative members, which contained statements such as that the lawsuit was an attack on the putative collective members, misrepresented the amount of potential recoverable damages, and equated the lawsuit to a medical malpractice lawsuit. *See e.g.*, *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 666-67 (E.D. Tex. 2003).[4] Each of these cases involved far more

---

[4] *See also Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1197-98 (11th Cir. 1985) (defendant conducted a telephone campaign to solicit putative members to exclude themselves from a Rule 23 certified class which was planned to coincide with the judge's vacation); *Stransky v. HealthOne of Denver, Inc.*, 929 F. Supp. 2d 1100, 1106-08 (D. Colo. 2013) (defendant held mandatory meetings with putative collective members to discuss the lawsuit and misrepresented information concerning potential damages); *Sloan v. Ameristar Casinos, Inc.*, 12-CV-01126-MSK-KMT, 2013 WL 1127062, at *2 (D. Colo. Mar. 18, 2013 (defendants CEO sent a letter to putative collective members misinforming them about the case, plaintiff's motives, and the law about potential financial ramifications against opt-in plaintiffs and no individuals filed consent to join the lawsuit); *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 2239797, *1-2 (N.D. Cal. Jun. 15, 2012) (defendant sent multiple emails to putative class members asking them to withdraw support from the lawsuit and including statements indicating that class members would risk their reputations and finances while class counsel would reap most of the reward, that class members' "past transgressions will become very public" and that their "life [will be put] into a holding pattern for years," and that the lawsuit will "cost you a great deal of money," and that defendant would "file a countersuit against you"); *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1228-31 (S.D. Ala. 2008) (defendant procured 245 declarations from putative class members where defendant called each class member individually into a meeting, and falsely representing that the statements were part of a "survey");

egregious and coercive behavior on behalf of the defendant than the vague and unsubstantiated allegations Plaintiffs have presented here.

Notably, even in some of these much more extreme cases, the courts did not authorize an unlimited restriction on communications as Plaintiffs propose here. *See Potts*, 2016 WL 162201, at \*16 (continuing a previously-agreed upon protective order, which forbade the defendants from "***initiat[ing]*** any communications with named Plaintiffs, any class member, or putative Plaintiffs regarding the subject matter of this litigation until further Order of this Court." [emphasis added; internal citation omitted]) and *Ojeda-Sanchez*, 600 F. Supp. 2d at 1381-82 (prohibiting defendants' verbal communications with putative collective members and their families regarding the lawsuit but permitting written communications with advance notice to plaintiffs' counsel). Given the clear distinctions between Plaintiffs' allegations and the extreme circumstances in the cases Plaintiffs' cite to support their motion, Plaintiffs' motion should be denied.

### E. The Facts and Circumstances in This Case Demonstrate There Is No Reason to Grant the Relief Requested by Plaintiffs.

Finally, an examination of the opt-in statistics in this case further demonstrates the frivolous nature of Plaintiffs' Motion. Remarkably, the opt-in rate in two of the three states where Plaintiffs allege interference occurred is significantly higher than the overall 12% average (New York = 21% and Georgia = 15%). The opt-in rate in Texas, where Stage operates hundreds of stores, is in line with the 12% average. As the *Lewis* court noted, a claim that putative members "were coerced or pressured into opting out of the litigation . . . would appear

---

*Randolph v. PowerComm Const., Inc.*, 41 F. Supp. 3d 461, 463 (D. Md. 2014) (individuals who allegedly opted out subsequently filed declarations indicating they were: "approached with settlement offers while in the hospital on intravenous painkillers," opted out only upon learning that defendants intended to terminate employees who did not sign the opt-out forms, and were tricked into signing the forms).

frivolous in light of the fact . . . that more than ninety plaintiffs have joined the litigation since the Court conditionally certified the class." 2011 WL 8964496, *5. A similar observation is appropriate here: If Stage had conducted a widespread campaign discouraging participation in this lawsuit, one would not expect over 1,200 current employees to have opted to join the lawsuit and higher-than-average opt-in rates in the states where Plaintiffs specifically allege such discouragement occurred. Ultimately, Plaintiffs have failed to present any evidence to counter the conclusions justifiably drawn from these statistics and their motion must be denied as a result. *See id.*

## IV. CONCLUSION

There is no evidence, let alone "clear evidence" of severe wrongdoing by Stage to warrant the relief requested by Plaintiffs. Stage acted diligently, responsibly, and reasonably when responding to Plaintiffs' Counsel's demands and anonymous reports. As a result, and based on the facts and arguments presented above, Stage respectfully requests that the Court deny Plaintiffs' Motion for Corrective Notice in its entirety.

Date: April 10, 2019                              Respectfully submitted,

*s/John H. Lassetter*
John H. Lassetter (MN #0389009)
(admitted *pro hac vice*)
Lyndsey M. Marcelino (MN #0399757)
(admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2136
Telephone: 612.630.2136
jlassetter@littler.com
lmarcelino@littler.com

Levy Leatherman, Bar No. 34631
333 Commerce Street, Suite 1450
Nashville, TN 37201
Telephone: 615.383.3033
Facsimile: 615.383.3323
lleatherman@littler.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2019, I electronically filed the foregoing Defendant's Response In Opposition To Plaintiffs' Motion For Corrective Notice, along with the Declaration Of John H. Lassetter In Support Of Defendant's Response In Opposition To Plaintiffs' Motion For Corrective Notice, the Declaration Of Timothy Moyer In Support Of Defendant's Response In Opposition To Plaintiffs' Motion For Corrective Notice, and the Declaration Of Eddie Miller In Support Of Defendant's Response In Opposition To Plaintiffs' Motion For Corrective Notice with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Charles P. Yezbak, III                          Laura Iris Mattes
Yezbak Law Offices                           Outten & Golden LLP
2002 Richard Jones Road, Suite B-200         One California Street, 12th Floor
Nashville, TN 37215                           San Francisco, CA 94111

Molly Brooks
Elizabeth V. Stork
Deirdre Ann Aaron
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017


                                        *s/John H. Lassetter*
                                        John H. Lassetter


FIRMWIDE:163385904.2 098440.1004

21