UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MAYA CROSBY and DENEEN PATTON, on behalf of themselves and all those similarly situated, | ) ) ) ) |
| Plaintiffs, | ) NO. 3:18-cv-00503 ) |
| v. | ) ) |
| STAGE STORES, INC., | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Corrective Notice. (Doc. No. 89.) Stage Stores, Inc. ("Stage") has responded in opposition, to which Plaintiffs have replied. (Doc. Nos. 105, 115.) For the reasons set out below, Plaintiffs' Motion for Corrective Notice will be denied.

**I. Factual Background**

Plaintiffs initially sought certification of a collective class, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), consisting of all past and present employees of Stage who held various associate-level positions at Stage stores. (See Doc. No. 30.) On December 5, 2018, the Court granted Plaintiffs' Motion for Court-Authorized Notice Pursuant to Section 216(b) of the FLSA (Doc. No. 30) and ordered Stage to: (1) provide Plaintiffs' counsel with a list of the contact information (names, addresses, and email addresses) for putative class members; and (2) confer with Plaintiffs' counsel to arrive at an agreeable proposed Notice and Consent form. (Doc. No. 51.) The parties filed a proposed Notice and Consent form, which informed putative class members, among other things, that: (1) federal law prohibited an employer (i.e., Stage) from firing or in any way retaliating against them because of their participation in the lawsuit; and (2) any

questions or additional information should be directed to Plaintiffs' counsel. (Doc. No. 56-1 at 4.) The Court approved the proposed Notice and Consent form and it was disseminated among the putative class members. (Doc. No. 58.)

Subsequently, Plaintiffs filed the instant motion seeking: (1) authorization to provide corrective notice to the putative collective class; (2) prohibition of further discussion between Stage and putative collective members regarding the lawsuit; (3) a requirement that Stage issue a corrective communication to its managers; and (4) extension of the opt-in period by thirty (30) days from the issuance of the corrective notice. (Doc. No. 89.) In support, Plaintiffs' counsel filed three declarations: (1) her own declaration; (2) a declaration from Susan Gilson; and (3) a declaration from Taylor Washington.

   A. Counsel's Declaration

In her own declaration, counsel explains that: (1) putative opt-in plaintiffs in at least four stores across three states have complained that they fear retaliation for joining the lawsuit; and (2) certain Stage Store Managers or District Managers have made misleading statements discouraging potential, eligible employees from joining the collective class. (See Doc. No. 91.) Plaintiffs' counsel states that a Stage employee in Georgia contacted counsel and reported that her Store Manager told her that the instant case did not "apply to her" and it would be "fraud" for her to join the lawsuit. (Id. at 1-2.) Plaintiffs' counsel contacted Stage's counsel to alert them, Stage's counsel requested the pertinent information (i.e., the specific store, Store Manager, etc.), but Plaintiffs' counsel did not provide that information. (Id. at 2.) Instead, Plaintiffs' counsel requested that Stage issue a communication across all of its stores notifying store employees that any kind of retaliation against potential class members for asking questions, discussing, or otherwise joining the lawsuit was prohibited. (Id.)

Stage's counsel forwarded to Plaintiffs' counsel a communication sent to all the District Managers, informing them that any kind of retaliation against employees for asking about or joining the lawsuit was strictly prohibited. (Id. at 2-3.) Upon receiving the communication, Plaintiffs' counsel requested that Stage issue a second communication reiterating that, to the extent potential class members had questions, they should contact the notice administrator or Plaintiffs' counsel. (Id. at 3.) Shortly after Plaintiffs' counsel sent this request, the notice administrator contacted Plaintiffs' counsel and informed her that a potential collective member working in Texas reported a fear of retaliation for joining the lawsuit. (Id. at 3.) Plaintiffs' counsel again contacted Stage's counsel regarding this second complaint and requested that Stage issue the proposed follow-up notice. (Id.)

Stage's counsel responded that: (1) its initial communication was adequate; (2) it had sent an additional communication to upper-level employees regarding the lawsuit, but this second communication was privileged and could not be shared; and (3) it needed more information from Plaintiffs' counsel about the specifics of the new Texas-based complaint in order to initiate an investigation. (Id. at 3-4.) Following this exchange, a Stage employee working in a store in Round Rock, Texas, reported to Plaintiffs' counsel that multiple employees at her store feared retaliation for joining the lawsuit due to the District Manager. (Id. at 4.) In this instance Plaintiffs' counsel provided the relevant information, including the specific store and employee, to Stage and again requested that Stage issue the previously-suggested follow-up notice. (Id.) Stage declined to issue any further communications to its employees. (Id.)

Shortly after the Round Rock, Texas complaint (the third complaint), Plaintiffs' counsel received reports that Stage's Human Resources employees had begun calling employees who worked at the Round Rock store and inquiring as to whether these employees had joined the

3

lawsuit. (Id.) Additionally, a fourth complaint was reported from Stage's New York store, stating that a District Manager was discouraging employees from opting into the lawsuit by suggesting that the lawsuit did not apply to certain employees. (Id.) Plaintiffs' counsel reported these issues to Stage, but Stage declined to issue any corrective notice or otherwise intervene. (Id. at 4-5.) Plaintiffs' counsel arranged a meet and confer call to address these issues with Stage, which was held on March 7, 2019. (Id. at 5.) The parties remained at an impasse following the call, necessitating the instant motion. (Id.)

### B. Susan Gilson Declaration

In her declaration, Susan Gilson explains that she was employed by Stage in the Round Rock, Texas store from approximately November 2016 to March 2019. (Doc. No. 116.) She asserts that, shortly after receiving the § 216(b) notice, she became aware that "some of my coworkers who had also received the notice feared retaliation for joining the lawsuit." (Id. at 1.) Gilson "heard" that her District Manager had made threatening comments in the past, which suggested that the District Manager "would retaliate." (Id. at 1-2.) She also notes that, on or around March 6, 2019, Eddie Miller, a member of Stage Stores' Human Resources department, called her and asked her: (1) how she found out about the lawsuit; and (2) whether she had elected to join. (Id. at 2.) Miller also asked whether she had spoken with anyone about the lawsuit and whether anyone had "intimidated her." (Id.) Gilson states that she "did not believe it was Mr. Miller's business to ask whether [she] had joined the lawsuit and who [she] had spoken with regarding the lawsuit." (Id.)

On this same day, she also "heard" from several of her coworkers that representatives from Store's HR department had also contacted them, and these coworkers felt "uncomfortable and intimidated as a result." (Id.) Gilson also recounts that she "heard" from Dana Roberts, the Store

4

Manager, that Miller had requested to speak with an employee that was not present, and, when Roberts informed him that he could not speak with that particular employee, Miller accused Roberts of having a "bad attitude" and reported her to the District Manager. (Id.) Gilson states that this interaction was merely "more evidence that Stage's HR department was intimidating, not helpful, to employees." (Id.) Ultimately, Gilson opted in to the lawsuit on or around March 11, 2019. (Id.)

### C. Washington Declaration

Taylor Washington avers that she was employed by Stage as a Sales Associate from approximately November to December 2018 at a Goody's in Pine Bluff, Arkansas. (Doc. No. 117.) She states that, in early April 2019, she received a letter form Benda Pedersen, a Stage Store HR Business Partner, informing her that Stage had conducted an investigation and concluded that she may be entitled to unpaid wages. (Id. at 1.) She explains that this letter was confusing because she had previously received the § 216(b) notice and was unsure whether the letter was attempting to resolve her potential claim, as it related to that suit, or whether her receipt of the letter precluded her from opting in. (Id. at 1-2.) Ultimately, Washington decided to join the suit. (Id. at 2.) Washington attaches a photograph of the letter to her declaration. (Id. at 4.)

## II. Analysis

### A. Plaintiffs' Motion and Stage's Response

Plaintiffs contend that Stage's unilateral communications with putative class members have undermined the Court's ability to control the ongoing collective action. (See Doc. No. 90 at 10-18.) Plaintiffs argue that, as relief, the Court should first order that Stage, its District Managers, and other agents cease communications with both putative class members and opt-in plaintiffs. (Id. at 10-11.) Plaintiffs contend that courts have banned defendants from continued communication

5

in similar circumstances where the defendant's communications with class members or potential class members was misleading or otherwise interfered with plaintiffs' rights. (Id. at 11.) Plaintiffs also argue that, in addition to being misleading, Stage's communications were intimidating and had the potential to chill participation in the suit due to the "inherently coercive nature of the employment relationship." (Id. at 13.)

In addition to banning further communications between Stage and its agents and class members, Plaintiffs seek corrective notices to be issued by Stage to its managers and putative opt-in plaintiffs. (Id. at 14.) Plaintiffs request that the notice to all eligible employees and actual opt-in plaintiffs clarify that the misleading statements by Stage and its agents are not true and to direct questions to Plaintiffs' counsel. (Id.) Plaintiffs request that the notice sent to Stage's managers inform them that: (1) Stage and its employees are prohibited by law from retaliating against employees for asking about the lawsuit or exercising their rights to join the lawsuit; (2) managers may not discourage employees from joining the lawsuit or interfere with their rights to join the lawsuit; and (3) if an employee has additional questions about the lawsuit they should be directed to Plaintiffs' counsel. (Id. at 15.) Finally, Plaintiffs request a thirty (30) day extension of the opt-in period following the issuance of the corrective notice to enable putative plaintiffs to benefit from the corrective notice. (Id. at 15.)

Stage responds that Plaintiffs' motion is a transparent attempt to market the litigation and wrongfully extend the opt-in period. (Doc. No. 105 at 1-2.) Stage argues that Plaintiffs have not demonstrated clear evidence of abuse or coercion sufficient to justify a restriction on its communications with employees. (Id. at 10-12.) Further, Stage contends that Plaintiffs' allegations of retaliation are speculative at best. (Id. at 12-13.) Stage argues that, even accepting Plaintiffs' allegations, they are too vague to satisfy their burden. (Id. at 13-14.) Stage maintains that the

6

communications described in Plaintiffs' motion, particularly its HR Department's calls to potential opt-in plaintiffs, were appropriate and do not justify the extraordinary relief that Plaintiffs seek. (Id. at 14-19.) Accordingly, Stage requests that the Court deny Plaintiffs' motion.

B. Applicable Law

"Because of the potential for abuse [in class actions], a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). "But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules" of Civil Procedure governing class actions, which give the court discretion to "make appropriate orders: imposing conditions on the representative parties or on intervenors . . . [and] dealing with similar procedural matters." Id. at 99–100. While this suit was brought pursuant to § 216 of the FLSA rather than Federal Rule of Civil Procedure 23, the same concerns and justifications for judicial oversight apply in both instances, and courts apply the same standards in FLSA class actions as they do in Rule 23 actions. See Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989) (holding that the same justifications and potential for abuse apply).

An exercise of discretion limiting the defendants' communications or remedying their effect must be supported by a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential for interference with the rights of the parties." Gulf Oil, 452 U.S. at 101. Such a weighing should identify the potential or actual abuses being addressed and "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." Id. at 101–02, 104 (finding that a serious restraint on expression must be "justified by a likelihood of serious abuses" and could not be supported by the "mere possibility of abuses"). Whereas specific findings of abuses may justify a ban on

7

communications, there mere possibility of abuse does not justify "adoption of a communications ban that interferes with formation of a class or the prosecution of a class action in accordance with the Rules." Id. at 104.

"As the requested protective order will limit defendants' speech, the Court must take into account First Amendment considerations." Ojeda-Sanchez v. Bland Farms, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009). However, the speech at issue—communications regarding pending litigation—is of a commercial nature designed to protect the defendants' business interests at risk in this litigation. Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1204 n.22 (11th Cir. 1985) (holding that defendants' communications with potential class members regarding litigation was commercial speech). Commercial speech is subject to more limited constitutional protection. Id. at 1205. "In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy First Amendment concerns if it is grounded in good cause and issued with a 'heightened sensitivity' for First Amendment concerns." Id. (citation omitted).

Where communications are misleading, coercive, or an improper attempt to undermine the class action by encouraging class members not to participate in the suit, they may be narrowly limited consistent with the First Amendment. Belt v. Emcare Inc., 299 F. Supp. 2d 664, 667–68 (E.D. Tex. 2003); see also Billingsley v. Citi Trends, Inc., 560 F. App'x. 914, 922 (11th Cir. 2014) (collecting cases from multiple districts that demonstrate that district courts routinely "exercise discretion to correct the effect of pre-certification communications with potential FLSA collective action members after misleading, coercive, or improper communications are made").

Courts have long recognized that a "unilateral communications scheme . . . is rife with potential for coercion," Kleiner, 751 F.2d at 1202, particularly when class members are contacted directly and in person, see Camp v. Alexander, 300 F.R.D. 617, 623 (N.D. Cal. 2014). Second, the

8

potential for coercion and abuse of the class action is especially high when there is an ongoing business relationship between the two parties, particularly when that relationship is one of employer to employee. See Kleiner, 751 F.2d at 1202–03; Camp, 300 F.R.D. at 622 (collecting cases from multiple districts and noting that "[o]ther courts have also noted the potential for coercion in situations where employers contact putative class member employees").

"Even absent a finding of coercion, however, the court may remedy the effects of any communications between defendants and their employees if those communications were misleading." Potts v. Nashville Limo & Transport, LLC, Case No. 3:14-cv-1412, 2016 WL 1622015, at *14 (M.D. Tenn. Apr. 19, 2016). A defendant may engage in "self-serving advocacy" so long as the statements are not inaccurate or misleading. Keystone Tobacco Co., Inc. v. U.S. Tobacco Co., 238 F. Supp. 2d 151, 157 (D.D.C. 2002). This self-serving advocacy does not, however, allow a defendant to "mislead[ ] . . . class members about the strength and extent of their claims and the alternatives for obtaining satisfaction of those claims." Id. at 155 (quoting In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1139 (7th Cir. 1979)); accord Camp, 300 F.R.D. at 624–25 (invalidating signed opt-out declarations where a letter sent to putative § 216 class members omitted relevant information regarding the plaintiffs' claims, presented an "entirely one-sided" view of the case, failed to provide contact information for the plaintiffs' counsel, and, therefore, was misleading). Defendants may not omit details or fail to provide relevant information regarding the plaintiffs' claims when communicating with class members, and courts have found certain communications to be misleading when they fail to explain the plaintiffs' claims, do not append the plaintiffs' complaint to a settlement offer, or fail to provide contact information for the plaintiffs' counsel. See, e.g., Camp, 300 F.R.D. at 624–25; Keystone Tobacco Co., 238 F. Supp. 2d at 155–57.

C. Application

A comparison of Plaintiffs' motion and Stage's response makes clear that the parties do not dispute the underlying factual bases for the motion. (Compare Doc. Nos. 90 at 7-10 and 91 at 1-6 with Doc. No. 105 at 3-10.) Given this, the Court's analysis turns on whether the record reflects clear and specific evidence that the type of communications engaged in by Stage have been abusive and threaten this litigation. See Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc., 214 F.R.D. 696, 697–98 (S.D. Ala. 2003) ("[T]he movant must show that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation.").

As a preliminary matter, Plaintiffs have offered scant supporting evidence for their requested relief, especially considering their burden to produce a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential for interference with the rights of the parties." Gulf Oil, 452 U.S. at 101. The bulk of Plaintiffs' evidentiary support for their motion comes in the form of Plaintiffs' counsel's declaration. (See Doc. No. 91.) Although there are no strict parameters as to what constitutes proper evidentiary support in the context of corrective notice motions, the Court accords Plaintiffs' counsel's declaration modest weight. Counsel's declaration is merely a recitation of four complaints that anonymous employees relayed to her, all of which lack personal knowledge and are undoubtedly constitute hearsay. (Id. at 1-6.) The Court acknowledges that the employees may not have been willing to file their own declarations for fear of retaliation, and, therefore, counsel was left with little choice but to file the declaration herself. However, it is Plaintiffs' responsibility to provide a clear record that allows the Court to make specific findings supporting the requested relief. Gulf Oil, 452 U.S. at 101. This responsibility necessarily entails a trade-off. In this instance, for the Court to have a clear record with specific findings supporting Plaintiffs requested relief, the evidentiary support must also be

10

clear and direct—not the second and third-hand accounts of counsel. Plaintiffs must shed their anonymity by providing clear, direct, and first-hand accounts of the improper communications that threaten this litigation, thereby establishing a clear record for the Court. The prohibition against retaliation is real and carries heavy sanctions that protects employees when stepping forward. Accordingly, counsel's vicarious accounts of these allegedly improper communications are insufficient to carry Plaintiffs heavy evidentiary burden.

Plaintiffs other supporting declarations fare no better. Gilson's declaration merely establishes that Stage HR contacted her about the lawsuit. (Doc. No. 116 at 2.) In several hearsay statements, Gilson explains that she "heard" from her coworkers that they felt intimidated by Stage's HR communications, but she neither details who these employees were nor how they felt threatened, and she does not state that she felt intimidated. (Id. at 1-2.) Gilson, however, does provide her first-hand personal communication with Eddie Miller, a member of Stage's human relations department. (Id.) Gilson reports that Miller, among other things, asked her if she ahd joined the lawsuit and whether she had spoken with anyone about the case. Both questions were improper and of no good concern of Stage. Washington notes only that she received a notice from Stage about certain unpaid overtime compensation she may be entitled to, and this caused confusion about her ability to opt-in to he lawsuit. (Doc. No. 117 at 1-2.) These declarations, while based on first-hand personal knowledge of the declarants, do not demonstrate a "clear record" that Stage's communications are impeding the proper functioning of this litigation.

"Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel." Cox Nuclear

11

Med., 214 F.R.D. at 698. Here, notwithstanding Miller's questions to Gilson, there is insufficient evidence that Stage engaged in the type of abusive practices that would warrant a protective order from the Court. Further, although the Court acknowledges that a past or present employment relationship between the parties increases the risk that communications between them will have a coercive effect, see Belt, 299 F. Supp. 2d at 668, there is no evidence that the alleged improper communications actually resulted in eligible employees electing not to opt-in. Indeed, the supporting declarations from actual employees indicates that they both decided to opt in to the lawsuit. (Doc. Nos. 116, 117.) At bottom, Plaintiffs' scant evidentiary support, at most, demonstrates that there is a mere possibility of abuse, which is insufficient for the Court to impose the extraordinary relief they seek. Gulf Oil at 101–02, 104 (finding that a serious restraint on expression must be "justified by a likelihood of serious abuses" and could not be supported by the "mere possibility of abuses"). Therefore, the Court will decline to exercise its discretion to issue a corrective notice. However, the Court does not condone, and Stage should address, Miller's impropriety noted above.

### III. Conclusion

Accordingly, for the reasons set out above, Plaintiffs' Motion for Corrective Notice (Doc. No. 89) is **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR
CHIEF UNITED STATES DISTRICT JUDGE